## HOIT v. THE STRATTON MILLS.

When, in a deed of growing trees to be removed by the grantee from the grantor's land, the terms of grant, taken in their literal and usual sense, signify an absolute conveyance of the title of the trees, the grant is not made a conditional one by a stipulation (express or implied) as to the time of removal.

If no time is expressly fixed, the construction generally is, that the grantee has a reasonable time for removal.

If the grantee, after the expiration of such reasonable time, enters and removes the trees which were absolutely conveyed to him by the deed, he is liable, in trespass, for the entry, but not for the value of the trees.

TRESPASS *qu. cl.* and *de bonis.* Plea, the general issue, and brief statement of license. In 1863, one Rebecca Very, who then owned the land, conveyed the timber standing, lying, and being thereon, to one Kingsley, by deed (duly executed, acknowledged, and recorded), containing an agreement that Very would deliver the timber at a certain place not on the land, on or before April 1, 1866, and that, if Very failed so to deliver it, the grantee, his heirs and assigns, might enter the premises and take the timber. Very received payment for the timber, but did not deliver it. In 1866 Kingsley conveyed the timber to Hardy, and in 1868 Hardy conveyed it to the defendants. In 1870 Very conveyed the land to the plaintiff. In 1871 the defendants cut some of the timber and carried it away.

The jury disagreed, and questions were reserved.

*Cushing* and *Albee,* for the plaintiff.

*Wheeler & Faulkner,* for the defendants.

DOE, J. Very, the former owner of the land, having failed to deliver the timber April 1, 1866 (the time agreed upon), Kingsley, his heirs and assigns, had a reasonable time after that date in which to take it. This reasonable time is given, not by the express terms of the deed, but by construction,—that is, by an inference of the intention and understanding of the parties. It would be unreasonable to infer that the parties understood that Kingsley, his heirs and assigns, would have a right to leave the timber encumbering the land forever, or to enter and remove it whenever they pleased at any time or times in the distant future. The reasonable inference is, that the parties understood and agreed that the timber not delivered by Very on or before the first day of April, 1866, might rightfully remain on the land a reasonable time after that date, and that Kingsley, his heirs and assigns, might rightfully enter within that reasonable time to remove it. The length of the reasonable time is a question of fact for the jury. If the

defendants entered after the expiration of the reasonable time, they are liable for the entry.

Are the defendants liable for the value of timber removed by them after the expiration of the reasonable time, as well as for the entry? This question is not answered by the express terms of the deed, but, like the question whether Kingsley, his heirs and assigns, had a reasonable time after April 1, 1866, for removing the timber, it must be answered by a fair and reasonable construction. The defendants are not liable for the timber removed by them after the reasonable time, if it was their property; they are liable for it if it belonged to the plaintiff. Would timber, removed by the defendants after the expiration of the reasonable time—after their right to enter had ceased—be theirs, or the plaintiff's? Did the deed from Very to Kingsley convey the timber absolutely, or upon condition that it be removed before the expiration of the reasonable time? The deed, in terms, says nothing about a reasonable time, and nothing about a condition of removal within a reasonable time. But the deed means that Kingsley, his heirs and assigns, could rightfully keep the timber on the land no longer than a reasonable time after April 1, 1866, and could rightfully enter to remove it only within such reasonable time. And, this being the meaning and legal construction of the deed, the case is as if a stipulation for the removal of the timber within such reasonable time had been inserted in the deed. Suppose the deed had contained this additional provision: " Said Kingsley, his heirs and assigns, are to have a reasonable time after April 1, 1866, to take the timber off in." If the defendants cut the timber within, and removed it after, the reasonable time, they would not be liable for its value. *Plumer* v. *Prescott*, 43 N. H. 277. An unconditional conveyance of growing trees without the land, instantaneously severs them from the land, in contemplation of law, and transforms them into personal property. *Kingsley* v. *Holbrook*, 45 N. H. 313.

If the deed from Very to Kingsley conveyed the trees, they became the personal property of the grantee, rightfully on the grantor's land until the expiration of the reasonable time, and wrongfully there after that time. The value of the grantee's property would not be a part of the damage done by him in wrongfully entering to remove it after that time; but the injury done to the land-owner by the timber-owner's fault in allowing his property to wrongfully remain on the land, would be a damage for which the land-owner could maintain an action. *Dame* v. *Dame*, 38 N. H. 429, 432, 433; *Harris* v. *Gillingham*, 6 N. H. 9, 11; Domat Civil Law, B. 2, T. 9, S. 1, sec. 8. The deed does not contain an express stipulation either that the grantee may or that he shall remove the trees within the reasonable time; but his obligation to remove them within that time is as plainly shown by his making the purchase and accepting the deed, as the grantor's obligation to allow the reasonable time by his making the sale and executing the deed. In the absence of a literal agreement, the mutual understanding of the parties on both points is necessarily implied from the fact of the sale.

If the deed conveyed the trees on condition that they be removed within the reasonable time, or conveyed such trees only as should be removed within that time, then the trees not removed within that time did not pass by the deed, but remained the property of the land-owner, and their value would be a part of the amount of damage done to the plaintiff by the defendants' entering and removing them.

The deed purported to convey the timber trees " standing, lying, and being " on the land, with an express agreement that the grantor would deliver them off the land on or before April 1, 1866, and with an implied agreement that the grantee might and should remove, within a reasonable time after that date, such as the grantor did not deliver according to his promise. If any of the trees were " lying " on the land when the deed was delivered, they passed by the deed when the deed was ,delivered, as any other personal chattels would pass. Did the trees then " standing " pass at the same time ? The deed does not expressly make any distinction between those " lying " and those " standing." In terms, it conveys those " standing " and those " lying " equally without condition. Does a fair construction of the deed make a distinction between them ? If there is an implied condition applicable to those " standing," and not applicable to those " lying," it is, not that the former shall be removed from the land within the reasonable time, but merely that they shall be cut down within that time— *Plumer* v. *Prescott;* and as the deed, construed to be absolute and unconditional (as it is if taken literally), would be a constructive severance of the " standing " trees, and a transformation of them into personal property—*Kingsley* v. *Holbrook*—what reason is there to infer, in the absence of an express stipulation on the subject, that the parties intended the " standing " trees should not pass by the deed unless they were cut within the reasonable time ? Since a conveyance of standing trees operates as a conveyance of real estate and a severance of it, or as a severance and a conveyance of personal property ; and since the parties did not agree that the trees " lying " on the land when the deed was made, and those cut within the reasonable time, should remain the property of the grantor unless they were removed within the reasonable time,—what rule of construction is there upon which it can be held that the parties intended that those " standing " when the deed was made should remain the property of the grantor unless they were cut within the reasonable time ? When the removal of personal chattels from the vendor's premises within a reasonable time is not necessary to the passing of the title of the chattels to the vendee ; when standing trees are more easily changed from real to personal property by a paper instrument than by an iron one ; and when the mere cutting down such trees is not a liberation of the land from their encumbrance,—how can this deed (unconditional, in its terms, as to vesting in the grantee the ownership of the trees " standing, lying, and being " on the land) be construed to retain in the grantor the ownership of the " standing " trees not cut within the reasonable time ? Why should " standing " trees be exempted from the operation of the general rules of law ?

*Pease & a.* v. *Gibson,* 6 Greenl. 81, was trespass *qu. cl.* Dec. 7, 1819, one O., who then owned the land, agreed, in writing under seal, to let H. "have all the pine trees fit for mill logs on" a certain lot of land, said H. "to have two years from date to take off said timber." After the lapse of the two years, H. assigned his right to W., "under whom the defendant justified as his servant," upon the pleas of the general issue and license. At the trial, the judge ruled there was no defence; and the ruling was sustained on the ground that under the general issue the defendant offered no proof of title to the *locus in quo,* and, under the plea of license, the only license proved was one that had expired by its own limitation on Dec. 7, 1821, several years before the entry complained of. The defendant did not claim that, if he was liable for the entry, he was not liable for the value of the trees which he carried away. The question of the measure of damages was not raised. If the plaintiffs owned and had possession of the land, and the original license had expired, and no new one was given, the decision that, in trespass *qu. cl.,* upon the pleas of the general issue and license, the plaintiffs were entitled to a verdict, was evidently correct. But such a decision is no authority on the question whether the value of the trees should be included in the damages. The court, MELLEN, C. J., and PARRIS, J. (WESTON, J., being absent), added the following observations: "But if we were at liberty to consider a sale of the timber as proof of the license pleaded, still our opinion would be that it was only a conditional sale—that is, a sale of the timber that H. or his assignee should cut and carry away within the two years mentioned in the license. To admit the construction given by the defendant's counsel, and consider such a permission as a sale of trees, to be cut and carried away at the good pleasure of the purchaser, and without any reference to the limitation, in point of time, specified in the permit, would be highly injurious in its consequences. It would deprive the owner of the land of the privilege of cultivating it and rendering it productive, thus occasioning public inconvenience and injury, and, in fact, it would amount to an indefinite permission. The purchaser, on this principle, might, by gradually cutting the trees and clearing them away, make room for a succeeding growth; and before he would have removed the trees standing on the land at the time of receiving such a license or sale, others would grow to a sufficient size to be useful and valuable, and thus the owner of the land would be completely deprived of all use of it. Principles leading to such consequences as we have mentioned cannot receive the sanction of this court."

If the time for removing trees or other things from the vendor's land is expressly fixed in the contract of sale, the purchaser is a trespasser in entering after that time to remove them. If no time is expressly fixed, a reasonable time is ordinarily to be taken, by implication and construction, as the time intended by the parties; and the purchaser is a trespasser in entering after the reasonable time. In either case, being a trespasser, he is liable for the damage done to the land-owner by his trespass. But whether he is liable to the land-owner

for the value of what he carries away as well as for his wrongful entry, depends upon the question whether what he carries away is his property or the property of the land-owner. The reason given, in *Pease & a.* v. *Gibson*, for holding that the trees were the property of the land-owner, was the inconvenience and injury which the land-owner would suffer from the purchaser's keeping his trees on the land as long as he pleased. Was that a sufficient reason ?

The defendant (in interest), in that case, claimed that the sale of the trees was absolute, and that a new license to enter had been given after the expiration of the two years. The court held (on some ground not very distinctly reported) that there was no evidence of a second license. The defendant did not contend that he had a right to keep his trees on the plaintiffs' land as long as he pleased, or to keep them there at all without the plaintiffs' consent. But the court seem to have inadvertently taken it for granted that the defendant could not own the trees after the time fixed for their removal, unless he had a right to keep them on the land as long as he pleased ; that the trees could not be the property of the defendant, because, if they were not the property of the plaintiffs, they were wrongfully on their land ; and that the defendant's claim involved the absurdity of a land-owner's selling trees with an agreement that they might remain on his land forever without his consent. The question, whether certain property on the plaintiff's land belongs to the plaintiff or the defendant, is not to be confounded with the question whether, if it belongs to the defendant, it is wrongfully on the plaintiff's land. The title of property does not necessarily depend in all cases on its locality, or on its being rightfully or wrongfully where it is.

When A agrees to sell property that is on his land (in his shop, store, house, or barn, or out-doors), and B agrees to buy it ; and enough is done to pass the title, except coming to a mutual understanding that the title passes ; and the only doubt as to the existence of such an understanding arises from a stipulation that B shall remove the property within a certain or a reasonable time,—this stipulation is not necessarily, in all cases, a condition attached to the passing of the title. In some cases of parol contract for the sale of personal property, with a stipulation as to time of removal, it might be a question of fact for the jury whether the parties understood that the title should not pass, or should revert, unless the property was removed within the time agreed upon. There might be circumstances tending to show such an understanding ; both parties might testify what their understanding was on that point when the bargain was made. And in a written contract, construed by the court, containing no express stipulation that the passing of the title should depend upon the removal of the property within the time fixed, a condition to that effect might be inferred from various provisions indirectly showing the intent of the parties. But there is no absolute rule of law requiring such a condition to be inferred in all cases from a stipulation (express or implied) about the time of removal. When the property is where the vendee has no right to keep it, there is

generally a stipulation (express or implied) that he shall remove it within a certain time or a reasonable time; but it does not necessarily follow as a matter of law (and, as a matter of fact, the parties do not generally understand), that the title is affected and the sale defeated by the non-performance of that stipulation. Such a stipulation may be independent of the title; and it may be a condition annexed to it. Whether it is the former or the latter, is a question to be settled by a fair construction of the whole instrument. When (as in the present case) the terms of grant in a deed literally signify an absolute conveyance of " standing " trees, and there is no conditional or explanatory provision other than a stipulation (express or implied) for removal within a certain or a reasonable time, does a fair construction of the whole make that stipulation a condition that defeats the grantee's title to " standing " trees, while it is an independent provision that does not affect the title of trees " lying " on the ground ?

No distinction was made, in *Pease & a.* v. *Gibson,* and no principle was there laid down on which a distinction can be made, between trees and other personal property, or between trees " lying " and trees " standing." And as a conveyance of standing trees is, in law, a severance, and a conversion of them into personal property at the time of the delivery of the deed (*Kingsley* v. *Holbrook*) ; and as a stipulation (express or implied) fixing the time of removal is not, of itself, a modification of the literal terms of an absolute grant of standing trees afterwards cut within the time of removal; and a mere non-compliance with such a stipulation does not defeat the title to such trees (*Plumer* v. *Prescott*),—it is impossible to construe such a stipulation as a modification of the literal terms of an absolute grant of standing trees afterwards cut after the time of removal. If such a stipulation is not a condition that the title is not to pass unless the trees are removed within the stipulated time, it cannot be a condition that the title is not to pass unless they are cut within that time. If an agreement as to time of removal does not make the title depend upon removal, it does not make the title depend upon cutting.

The injury which the land-owner suffers from the trees not being removed within the time fixed, if it is the reason of a rule of construction, would apply to trees cut during that time, and to trees lying on the ground when the deed was delivered, as well as to trees cut after the expiration of the time fixed. It might also apply to buildings and other chattels of great weight, bulk, number, or quantity ; and, under some circumstances, to a single animal, or some small article, combustible, explosive, or otherwise dangerous, noxious, injurious, or troublesome. Injury may result to any person from the wrongful occupation of any part of his premises by any property of another. The injuries that may be thus caused are infinite in variety, and of an infinite number of degrees in amount. The most trifling one of them is not sufficient, in law, to turn a written agreement about the time of removal, into a condition defeating the title ; and no method has been discovered of dividing them into two classes, one of which can furnish the legal con-

struction of a deed, while the other cannot. When each of two deeds contains the literal terms of an absolute grant of property on the grantor's land, and a stipulation (express or implied) as to the time of removal, the court cannot hold the stipulation to be a condition affecting the title and defeating the grant in one case, on the sole ground that the court infer that, as a matter of fact, non-removal would be injurious in a high degree to the grantor, and hold the grant in the other deed to be absolute on the sole ground that the court infer that, as a matter of fact, non-removal would inflict only a slight injury. If a deed contains the literal terms of an absolute grant of a forest and an axe on the grantor's land, and a stipulation (express or implied) that the property is to be removed by the grantee in a reasonable time, and none of it is removed in that time, the court cannot hold that, as matter of law, the forest belongs to the grantor and the axe to the grantee.

In *Pease & a.* v. *Gibson*, the court suggest that one injurious consequence of holding the trees (not removed within the time fixed) to be the property of the grantee, would be that the grantee could take " a succeeding growth." But if the question of succeeding growth had arisen, the plaintiff would probably have claimed that the conveyance was of such pine trees only as were " fit for mill logs " at the time of the conveyance, and not of such as might, by subsequent growth, become fit during the two years, the stipulated time of removal. The defendant certainly could not have claimed that the conveyance was of such as should ever become fit after that time.

Growing trees, like a herd of cattle or a horse, not only occupy and encumber the land ; they take " from it the means of growth and support." *Plumer* v. *Prescott,* 43 N. H. 277, 278. For the wrongful abstraction of nutriment from the plaintiff's land, by members of the vegetable or animal kingdoms belonging to the defendant, as well as for the wrongful occupation of the land, the defendant would be liable in some form of action. The wrongful conversion of the plaintiff's property to the defendant's use, by vegetable or animal process, is one of the numerous injuries which a plaintiff may suffer from property wrongfully on his premises. But an injury of that kind may be less than others occasioned by wrongful occupation without any such conversion ; and it cannot establish a rule of law for giving to the literal terms of an absolute grant a construction that leaves the title in the grantor.

When the time for the defendant's keeping his trees or other chattels on the plaintiff's land has expired, the defendant cannot keep them there as long as he pleases. He cannot rightfully keep them there after that time. He can wrongfully leave them there after that time, as he can wrongfully do, or wrongfully neglect to do, a great variety of other things. He is liable, as for any tort or breach of contract, to the extent of the legal rule of damages, for injuries caused by his wrongful omission to remove them within the time expressly or impliedly fixed.

Not only has the plaintiff a remedy by legal process for the injuries which he suffers from the defendant's property being on his land after the time of removal; he also has the " natural, essential, and inherent" right of " protecting property." He can, without legal process, protect his property against the wrongful presence and injurious action and effect of the defendant's property. And this right is the right to do whatever, under the circumstances of each case, apparently is reasonably necessary to be done in defence. *Aldrich* v. *Wright*, 53 N. H. 398. In that case, some authorities are cited showing that it may be reasonably necessary, in the defence of one's own property, to destroy the property of another. If in defence it is reasonably necessary for A to remove B's property from A's land, he may remove it. If it is reasonably necessary for him to destroy it, he may destroy it. If it is reasonably necessary for him to sell it, he may sell it. If it is reasonably necessary for him, in defence, to do anything after reasonable notice, he may do it after reasonable notice. If it is reasonably necessary for him to have a lien on the offending property or its proceeds for the expenses of the exercise of his natural right of defence, he has a lien. When B is liable for the damage caused to A by his property wrongfully remaining on A's land, he must also be liable for the reasonable expense to which his fault puts A in ridding his land of the encumbrance. And if indemnity by lien is a part of the reasonable necessity of A's defence, it is a part of his natural right of defence. His remedy by the exercise of his natural right of defence is as broad as the reasonable necessity of the case. That right is a plenary one, whether the thing against which it may be exercised is wrongfully allowed to remain, or is wrongfully put on his land, by B. He may resist a wrongful occupation of his land, as well as a wrongful invasion of it. A wrongful occupation is a wrongful invasion of his right of property.

There is no peculiar hardship in this case that can be the foundation of an exception to the general rules of law, or make that a conditional conveyance of trees which would be an absolute conveyance of other property. The deed is absolute; the title passed to the grantee; and the defendants are not liable for the value of their own property removed after the expiration of the reasonable time.

*Case discharged.*